UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MANUEL GOMEZ,

                      Plaintiff,

                -against-                          05 Civ. 4811 (LAK)

THE CITY OF NEW YORK, et al.,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

            Appearances:

                      Jason L. Solotaroff
                      Catherine E. Anderson
                      GISKAN & SOLOTAROFF
                      *Attorneys for Plaintiff*

                      Phyllis Calistro
                      Assistant Corporation Counsel
                      MICHAEL A. CARDOZO
                      CORPORATION COUNSEL OF THE CITY OF NEW YORK
                      *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

            Plaintiff, a New York City police officer, is a plaintiff in and one of five class members who opted out of a class action brought on behalf of all Latino and African American members of the department and settled in 2004. He recently brought this new action pursuant to

2

Title VII of the Civil Rights Act of 1964, as amended,[1] and various other provisions of federal, state and local law.  He claims that he was been subjected to a hostile work environment, disparate treatment in disciplinary and related matters, and unlawful retaliation.  He now moves for a preliminary injunction requiring the New York Police Department ("NYPD") "to provide [him] with an assignment appropriate for an officer of his experience and training . . ." and to return to him his service revolver.

*Facts*

Given the nature of the issues dispositive of this motion, the facts may be sketched in the broadest of outline.

In early 2004, plaintiff filed a complaint with the Police Department's Office of Equal Employment Opportunity in which he complained of alleged discriminatory and retaliatory acts in the precinct to which he then was assigned.  Two days later, he was ordered to report for a psychiatric examination.  Plaintiff then filed a complaint with the Equal Employment Opportunity Commission.  At about the same time, he was transferred to another assignment.  Several transfers followed in rapid succession until he was assigned in May 2004 to the Brooklyn Gowanus Auto Pound, a site at which the working conditions were not to plaintiff's satisfaction and where, he claims, he had little or no opportunity for overtime or night pay.

In late April 2004, plaintiff received mobilization orders from the United States Army and went on military leave.  In May, just before he reported for duty, he was telephoned and told that

---

[1]

42 U.S.C. § 2000e *et seq.*

3

he was required to fill out Police Department "paperwork" before he departed.  Claiming that he lacked sufficient time to do so before reporting for duty, he departed without complying with the Police Department's requirement.  It appears also that plaintiff left without turning in his shield as required by the department's Patrol Guide.

Plaintiff returned from Army service in late April and, it appears, retrieved his service revolver from the NYPD property clerk, something that was possible only because he had retained his shield while in the Army. On May 5 or 6, 2005, after plaintiff returned from Army duty in Afghanistan and before he reported to the Police Department, he was involved in a domestic dispute in Putnam County.  The New York State Police responded and took plaintiff's service revolver, a rifle and a hunting knife into custody.[2]  The rifle and knife later were returned.

On May 6, 2005, plaintiff was ordered to report to the 48th Precinct where he was questioned regarding the domestic incident, his failure to turn over his shield while on military leave, and his failure to complete departmental paperwork before departing.  Plaintiff's request for the return of his service revolver was rebuffed on the ground that he first would have to undergo firearms retraining, which would take place after he was reinstated to active duty in July 2005 and he was ordered not to retrieve the revolver, which then was in the custody of the State Police.  Five days later plaintiff attempted to retrieve the weapon.  He claims that he did so only in response to an invitation from the State Police and that he informed the State Police at the time that he had been instructed by the NYPD not to retrieve the revolver.

In June, plaintiff was required by the NYPD to submit to a second psychiatric

---

[2]

Plaintiff claims that the State Police concluded that the complaint was "unfounded."

4

examination.  Plaintiff then reported for duty on July 11, 2005 to the NYPD's military and extended leave desk where he was required to undergo a psychological examination during which he claims he was asked about the class action.  On the following day, plaintiff was placed on modified and restricted duty.  When he questioned this classification, he allegedly was told that it was a result of ongoing investigations relating to the May 2005 domestic dispute.  He then was told to report to the Erie Basin Auto Pound.  His service revolver has not been returned.

Plaintiff attributes the repeated mental examinations, the charges in relation to the manner in which he departed for military service, and the undesirable work assignments to retaliation for his discrimination complaints and his having participated in and, presumably, opted out of the class action.

*Discussion*

In ordinary circumstances, a movant is entitled to a preliminary injunction only if the movant demonstrates a threat of irreparable harm[3] and either a likelihood of success on the merits or both the existence of substantial questions on the merits that are fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.[4]  Here, however, plaintiff seeks mandatory relief, a new work assignment and the return of his service revolver.  Moreover, he would

---

[3]  The threat "must be imminent or certain, not a matter of speculation." *Empire Transit Mix, Inc. v. Giuliani,* 37 F. Supp.2d 331, 334 (S.D.N.Y. 1999) (citing *Tom Doherty Assocs., Inc. v. Saban Ent. Inc.,* 60 F.3d 27, 37 (2d Cir. 1995)).

[4]  *See, e.g.*, *Richard Feiner & Co. v. Turner Ent. Co., MGM/UA,* 98 F.3d 33, 34 (2d Cir. 1996) (citing *inter alia Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)).

have the Court enjoin "'government action taken in the public interest pursuant to a statutory or regulatory scheme,'"[5] viz. the operation of the NYPD.  In consequence, he may obtain injunctive relief only by demonstrating a "clear" or "substantial" likelihood of success on the merits as well as threatened irreparable harm.[6]


*Threat of Irreparable Harm*

Plaintiff claims first that the NYPD's retention of his service revolver pending investigation poses a threat of irreparable injury because his life is in danger.  According to a state court criminal complaint filed in 2003, an individual whom plaintiff and his partner arrested then urged a crowd to overwhelm the officers and threatened to shoot the officers "when I get out."[7]  At oral argument, plaintiff's counsel advised that the individual who made the threat is not now incarcerated, that plaintiff has been back in the United States for some time, and that no attempt has been made upon him.

Threats of bodily harm to police officers or, for that matter, anyone else are serious business.  Injuries inflicted if they are carried out truly may be irreparable injury.  Nevertheless, given the facts that this threat occurred almost two years ago, that it was made in an extremely overheated situation, that the individual who made the threat was arrested at the time and therefore knows full well that the police know exactly who to look for in the event of an attempt on the

---

[5]

       *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir. 1996) (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

[6]

       *Jolly*, 76 F.3d at 473.

[7]

       Anderson Aff., Ex. 6.

6

plaintiff, and that the plaintiff and apparently the person who made the threat have been around for at least the past two months without incident, the threat of irreparable injury in consequence of plaintiff's deprivation of his service revolver is more speculative than imminent or certain, as it should be in order to justify injunctive relief.[8]

Moreover, the public interest must be considered, and it tends to cut against the plaintiff.  Plaintiff retained his shield while on Army duty, which enable him to retrieve his service revolver upon his return and before reporting back to the NYPD.  While in possession of the service revolver, he was involved in a domestic dispute that resulted in a law enforcement response.  While all of this may have been entirely innocent, there is strong reason to allow the NYPD promptly to complete its investigation of these matters, and of plaintiff's fitness to return to full duty and to bear a firearm, before the revolver is returned to him.

Plaintiff's second argument is that he is threatened with irreparable injury in that he is assigned to the Erie Basin Auto Pound.  The complaint is that there is no public transportation to that location, that plaintiff does not own a car, and that his lack of a personal automobile forces him to walk two miles from the train station or take an $8 taxi ride in order to get to work.

The argument is, at best, a substantial exaggeration.  The Erie Basin Auto Pound is located at 700 Columbia Street in the Red Hook section of Brooklyn.  The B77 bus passes within four blocks of that location and connects to two subway lines.[9]  While the Court accepts that plaintiff is inconvenienced, this inconvenience is not irreparable.  Should plaintiff prevail in the action, he

---

[8]

      *E.g., Tom Doherty Assocs., Inc.,* 60 F.3d at 37.

[9]

      This information is posted on the NYPD's web site. *See* www.nyc.gov/html/nypd/html/ssb/erie.html (last visited July 27, 2005).

could be compensated in damages for any additional commuting expense that he might incur as well as for the inconvenience.

*Likelihood of Success on the Merits*

The foregoing is sufficient to dispose of this motion, a clear and imminent threat of irreparable harm is a *sine qua non* for injunctive relief.  Nevertheless, the Court notes also that plaintiff has not established a clear or substantial likelihood of success on the merits.

In order to make out a *prima facie* claim of retaliation, plaintiff must show that (1) he participated in a protected activity, (2) he was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action.[10]  At that point the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. The plaintiff thereupon has the burden of demonstrating that a retaliatory motive played a part in the employer's decision.[11]

Although the Court is in no position to say that plaintiff's claim is without merit, the evidence presented on this motion falls considerably short of establishing a clear likelihood of success on the merits.

Mere inconvenience and alteration of job responsibilities generally do not rise to the level of a materially adverse change in employment conditions.[12]   Even assuming *arguendo* that

---

[10]

    *E.g., Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998).

[11]

    *Id.*; *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir. 1980).

[12]

    *E.g.*, *Galabaya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (change in working conditions must be more disruptive than a mere inconvenience or an alteration

8

plaintiff has alleged the requisite adverse employment action, however, his probability of prevailing on the merits is less than plain. The NYPD has articulated legitimate, non-retaliatory reasons for its decisions. Hence, the burden would be on plaintiff to prove by a preponderance of the evidence that a retaliatory motive nonetheless played a role in those decisions. The evidence of a retaliatory motive is circumstantial.[13] While the Court cannot say that a jury, if plaintiff gets that far, would reject it, it cannot say that it probably would accept it.

*Conclusion*

As plaintiff has established neither a threat of immediate and irreparable injury nor a clear likelihood of success on the merits, the motion for a preliminary injunction is denied. The case shall proceed promptly in order to obtain a timely resolution of plaintiff's claims.

The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

Dated: July 27, 2005

_____
Lewis A. Kaplan
United States District Judge
(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

of job responsibilities); *see also Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action.")

[13] Although neither side sought an evidentiary hearing, the Court considered whether a hearing would have contributed in a material degree to its ability to resolve the motion properly. As the evidentiary facts concerning the alleged threat of irreparable injury are undisputed, and as plaintiff's likelihood of success on the merits is largely a function of whether to infer a retaliatory motive on the basis of evidentiary facts that, for purposes of this motion, are not in material conflict, it concluded that a hearing was not required.

9